UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

          Plaintiff,

v.

Shahid McClellan,

          Defendant.

Case No. 3:21-cr-556

MEMORANDUM OPINION
AND ORDER

## I.   Introduction

Defendant Shahid McClellan seeks to suppress evidence seized during a search of a vehicle in which he was a passenger. (Doc. No. 9). The government filed a brief in opposition to the motion, (Doc. No. 10), and McClellan has filed a brief in reply. (Doc. No. 11). For the reasons stated below, I deny McClellan's motion.

## II.   Background

Just after midnight on October 10, 2020, Lake Township Police Officer J.D. Algarin was on patrol at a truck stop in Perrysburg, Ohio, when he observed a gray sedan parked and running in a parking spot in front of a convenience store at the truck stop. There were three individuals inside the vehicle. Algarin made eye contact with the driver, who "refused to acknowledge [him] and looked away several times." (Doc. No. 10-1 at 2). Algarin decided to run the license plate of the sedan and learned the vehicle had a notification for a stolen VIN plate. (*Id.*). Algarin approached the driver's side of the vehicle and the female driver, Charity Gilmer, opened the door and asked

Algarin if she had done something wrong. When Algarin told Gilmer that the vehicle had a notification for a stolen VIN plate, Gilmer indicated the vehicle belonged to her mother and provided Algarin with her mother's name. The information Gilmer provided matched what Algarin had learned from dispatch.

On January 19, 2020, Gilmer's mother, Michelle Frazier, had reported her car as stolen. Frazier had left the car unlocked and running in the street outside her home, waiting for the car to warm up. (Doc. No. 11-1 at 3). The vehicle was recovered a week later, on the property of an unrelated third party. (*Id.* at 2). The vehicle was locked and appeared undamaged, except that it was missing the VIN placard from the driver's side windshield. (*Id.*).

Algarin then asked Gilmer for her driver's license. Gilmer did not respond to Algarin's question, instead volunteering more information about the earlier theft of her mother's vehicle. When Algarin repeated his request, Gilmer stated she did not have her identification with her. Algarin then instructed Gilmer to turn off the engine and to step out of the vehicle. As Gilmer opened the door further, Algarin observed a black handgun in the driver's side door. Algarin secured the weapon and the keys to the vehicle and then ordered Gilmer and the two other occupants to place their hands on their heads and to remain seated. McClellan, who had been sitting in the front passenger seat, stated the gun was his and that he had forgotten it was in the car.

McClellan was placed under arrest and transported to the Wood County, Ohio Jail. Gilmer was given a warning after admitting to officers that her license was suspended and she had intended to drive home. The back seat passenger, one of Gilmer's co-workers who Gilmer had offered to drive home from work, was released.

On August 4, 2021, McClellan was charged by indictment with one count of knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and

2

924(a)(1)(B). (Doc. No. 1). He subsequently moved to suppress the evidence obtained from the vehicle on October 10, 2020.

### III. ANALYSIS

#### A. REQUEST FOR A HEARING

A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A hearing is not required if there are no "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996).

I conclude a hearing is not necessary. The parties have not identified any contested issues of fact. Instead, the source of their dispute is whether the facts preceding McClellan's arrest amount to a valid, constitutional basis for that arrest.

#### B. MOTION TO SUPPRESS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted).

Probable cause is the "reasonable grounds for belief" that evidence of a crime may be found in a certain place or location. *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair

probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

But not every encounter between the police and the public must be preceded by circumstances constituting probable cause. While McClellan protests[1] there was no indication of "a suspicion of a crime being committed before the officer targeted the vehicle," (Doc. No. 9 at 4), no such suspicion was necessary. As McClellan concedes, the sedan was parked in a public parking lot, in front of a convenience store. A motorist has no reasonable expectation of privacy in the license plate of her vehicle when that vehicle is in a location "'where it is readily subject to observation by members of the public.'" *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) (quoting Wayne R. LaFave, 1 Search & Seizure § 2.5(b) (4th ed. 2004)). Algarin had a right to be in a public parking lot conducting a routine patrol and, therefore, he did not engage in a "search" for purposes of the Fourth Amendment by observing and checking the vehicle's license plate.[2] *Ellison*, 462 U.S. at 563.

Next, law enforcement officers "'do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen.'" *Illinois v. Lidster,* 540 U.S. 419, 425 (2004) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)) (alteration added by *Lidster*). McClellan fails to show Algarin violated the Fourth Amendment by approaching the vehicle and talking to Gilmer while she was parked at the truck stop.

---

[1] For the purpose of this motion, I assume without deciding that McClellan has standing to challenge the seizure of the vehicle and its occupants. (*See* Doc. No. 10 at 4-5; Doc. No. 11 at 2-3).

[2] The parties disagree about the significance of the stolen VIN plate notification. But I conclude this dispute is not material, because Algarin did not need probable cause or reasonable suspicion to approach the parked vehicle and speak to its occupants and because Algarin subsequently developed a sufficient basis to seize both the vehicle and McClellan.

Nor did Algarin violate the Fourth Amendment by asking Gilmer for her driver's license. "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 185 (2004).

Thus far, the undisputed facts establish only a consensual encounter between Algarin and the occupants of the vehicle. It is true "[a] consensual encounter can ripen into a seizure if in light of all of the circumstances, a reasonable person [would] have believed that he or she was not free to walk away." *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) (first alteration added) (citations and internal quotation marks omitted). This encounter reached that point when Algarin instructed Gilmer to step out of the vehicle.

But an officer may briefly detain a person if the officer "'possesses a reasonable and articulable suspicion' . . . 'that the individual is, was, or is about to be engaged in criminal activity.'" *Id.* (quoting *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994) and *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000)). When Algarin learned Gilmer did not have her driver's license with her despite the fact that she was sitting in the driver's seat of a running vehicle,[3] he had "a particularized and objective basis for suspecting [Gilmer] of criminal activity" – that is, driving, or intending to drive, without a valid driver's license. *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (citations and internal quotation marks omitted). Moreover, Algarin's reasonable suspicion permitted him to briefly detain Gilmer to investigate further. *Bentley*, 29 F.3d at 1075 ("[W]here a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion

---

[3] Officers may draw reasonable inferences from the facts before them, including that a person in the driver's seat of a vehicle has driven or intends to drive that vehicle. *Cf. Kansas v. Glover*, 140 S. Ct. 1183, 1189 (2020) (holding an officer had reasonable suspicion sufficient to support a traffic stop where the officer had drawn the reasonable "inference that a registered owner with a revoked . . . driver's license might be the one driving the vehicle").

5

that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances.").

It was at this point – after Algarin permissibly engaged in a consensual encounter with Gilmer and after he gained reasonable suspicion of a potential traffic offense – that Algarin observed the gun as Gilmer stepped out of the car. As the government notes, once Algarin saw the firearm in the driver's side door of the vehicle, he had probable cause to believe Gilmer had violated Ohio Revised Code § 2923.16, which prohibits the improper handling of a firearm in a motor vehicle. On this basis, and to ensure officer safety, Algarin ordered all three occupants to place their hands on their heads and remain seated.

McClellan contends Algarin's interactions with the occupants of the sedan were motivated by his desire "to conduct a pretextual search of the car," (Doc. No. 11 at 4), after Gilmer "did not acknowledge the officer as he wanted to be acknowledged." (Doc. No. 9 at 4). But it is well established that an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). The objective, undisputed facts underlying this case establish Algarin did not violate McClellan's Fourth Amendment rights prior to his arrest.

## IV. CONCLUSION

For the reasons set forth above, I deny McClellan's request for a hearing and his motion to suppress. (Doc. No. 9).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

6